(No. 4839-  )

GROVER C. HENDERSON, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 16, 1960.*

36

A. DONALD FISHBEIN, Attorney for Claimant.

LATHAM CASTLE, Attorney General; LESTER SLOTT, Assistant Attorney General, for Respondent.

FEARER, J.

The complaint filed in this case is for personal injuries sustained by claimant on September 14, 1956, while he was driving his automobile in a westerly direction along and upon the north half of that portion of State Route No. 9, which is approximately four-fifths of a mile east of Rankin, Illinois and State Route No. 49.

At the time and place aforesaid, respondent, namely the Department of Public Works and Buildings, had under its control and supervision the stretch of road where the accident occurred, which was being repaired by duly authorized agents and employees of respondent. In so doing, it is alleged by claimant that respondent, by and through its agents, left unprotected, with no barricade or any warning whatsoever, a portion or section of said highway, which had been removed. Furthermore, respondent, through its duly authorized agents, failed to erect, in addition to other signs, a detour sign warning the traveling public of the defect in the highway.

It is further alleged that, as a direct and proximate result of the defective condition of the highway created by the agents of respondent, claimant, while operating his automobile thereon on September 14, 1956, at or about the hour of 11:40 A.M., drove into said hole in the highway. The opening in question measured approximately eight feet by seven feet at a point where the pavement was approximately sixteen feet in width and seven inches

thick. The hole extended across the entire westbound traffic lane. The westerly opening cut into the highway was approximately one mile east of the intersection of Routes Nos. 9 and 49. Another opening was cut into the easterly lane of traffic at a point approximately one and one-fourth miles east of Route No. 49.

No answer having been filed by respondent, a general traverse of the allegations of the complaint will be considered under the rules of this Court.

The only evidence offered as to the condition of the highway was the testimony of claimant and his witnesses.

Respondent offered as its only exhibit and evidence a Departmental Report, which can only be considered as prima facie evidence. In our opinion, in order to sustain the position of respondent, evidence of agents, who were familiar with the facts existing at the time of the alleged occurrence, should have been presented.

We are familiar with the fact that the State of Illinois is not an insurer of all persons, who travel upon its highways. However, the State is bound to maintain its highways in such a condition that the public can travel upon them with a degree of safety. Respondent is required to protect and warn the traveling public when any major improvements are being made, such as removing portions of the surface of highways, and should erect warning signs, flares, and use any and all devices to warn the traveling public of the repair work going on, or provide a detour, which would be safe for the public to drive on.

Respondent, of course, is relying upon the defense of contributory negligence and the Departmental Report.

We cannot ignore the evidence, which has been produced and offered on behalf of claimant. After taking into consideration all of the evidence, the facts and circumstances, as well as the physical facts surrounding

them, we are of the opinion that claimant has maintained the burden of proof in first proving by a preponderance or greater weight of the evidence that he was free from contributory negligence; secondly, that it was the negligence of respondent in leaving the highway in the condition it was in at the time without erecting barricades or proper signs warning the traveling public of the condition of the highway, or providing a safe detour for the traveling public upon said highway; and, thirdly, damages.

At the time of the alleged accident, claimant, Grover C. Henderson, was 69 years of age, was in good physical condition, and had normal vision. He was employed by the Nickel Plate Railroad Company of Cleveland, Ohio as a freight car inspector, and received a salary of $85.00 a week. He had been employed by said company for 38 years. His duties consisted of inspecting and classifying the freight cars of said company, which were located at various places along the railroad. He performed these duties by driving his automobile from place to place.

On the day of the accident, claimant was driving his 1951 Oldsmobile 4-door Sedan, which he had purchased for the sum of $950.00. The only evidence, which we have, is that the car was in a good mechanical condition. Claimant testified that he had been driving an automobile for over 50 years, and that he had driven over this particular portion of the road at least twice a day, six days a week, for 24 years.

Along this line, claimant further testified that, on the day of the accident, he traversed this route at 4:30 A.M., driving east from Rankin to Hoopeston, Illinois, and at that time he did not notice any repairs of construction work being done to the road, nor any indication that there would be any. At 11:20 A.M. he left Hoopeston to return to Rankin, driving west on Route No. 9,

traveling in the westbound traffic lane at a speed of between 55 to 60 m.p.h. It was a bright, clear day, and the pavement was dry. There was very little traffic, and he passed no other westbound vehicles. As he drove over Route No. 9 toward Rankin, he did not notice any repairs or construction work being done to the highway, or any indication that there would be any ahead of him, nor any signs, flags or barricades warning of the repairs and construction work then being done to the road ahead.

Corroborated testimony also appears in the records that, approximately one to one and one-fourth miles east of Rankin, Illinois on Route No. 9, there is a hill, and at its crest there is a gravel road, which joins Route No. 9 from the south, but does not continue north of Route No. 9. West of the gravel road there is a slight curve to the north on Route No. 9, but westbound traffic is unable to see the curve and the road, which continues on west until it passes the gravel road. It was at this point where a portion of the pavement had been removed.

Claimant testified that, ''I was just a split second from the hole before I saw it.'' He also testified that there was a light pole on the shoulder of the road to the right and north of the hole. To avoid hitting the pole, he swerved his automobile to the left, drove it off of the road and into a cornfield on the south side of the road. His automobile was totally wrecked, and was later junked. He was taken to the Paxton Community Hospital, where he later regained consciousness, and remained for nineteen days.

The treating physician was Dr. Alfonso Baquero, who did not testify at the time of the hearing. However, by stipulation, claimant's exhibit No. 5, which is a medical report from the doctor, was admitted into evidence. The admission diagnosis was as follows: cerebral concussion; shock, severe; possible internal injuries; and

multiple lacerations, abrasions and contusions. He was treated for shock, the open wounds were sutured, and he was given care consistent with preventing sepsis. On September 19, 1956, he developed a severe case of paralytic ileus, which remained a severe problem for two or three days. His course after September 22 was uneventful, and he was discharged on October 3, 1956. The final diagnosis of his injuries were: cerebral concussion; fractured skull, crack type, compound, left occipital area; fracture left os ilium, comminuted; contusion-sprain of the cervical spine and shoulders; multiple lacerations, abrasions and contusions; paralytic ileus, due to trauma.

According to the medical report, claimant was last seen by the doctor on January 6, 1959. He was still complaining of severe dizziness, which was more marked on change of position. The symptoms had remained since the accident with temporary improvement noted while taking medication.

At the time of the trial, claimant testified as to his present physical condition to the effect that his hand still appears to be half paralyzed, that he suffers from a dizzy condition for which he is still taking medication, and that he did not experience this condition prior to the accident on September 14, 1956. He further stated that he goes to the doctor all of the time, and that he is not able to drive his car as he did before the accident.

There is nothing in the doctor's statement relative to the paralysis, so that we are confined to the injuries appearing in the medical statement, which was admitted in evidence, and the prognosis given therein.

As to special damages, claimant testified that he paid $950.00 for his automobile, which was a 1951 Oldsmobile Sedan, that it was a total loss, and was junked. However, neither claimant nor respondent attempted to show what

41

salvage was received, or raised the question of storage or towing.

Under the circumstances, we could not consider that the automobile was worth the same on the day of the accident as it was at the time it was purchased. We must, therefore, consider depreciation on this car from the date on which it was purchased to the date of the accident, and certainly there must have been some salvage received by claimant. From the record, claimant's special damages, in addition to the automobile, amounted to approximately $1,288.39.

Claimant was employed by the Nickel Plate Railroad Company at a salary of $85.00 a week prior to and on the date of the accident. The record indicates that he has not worked since that date.

It is, therefore, the opinion of this Court that claimant is entitled to an award for personal injuries and property damage in the sum of $7,500.00.